**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | No. 11 CR 316-3 |
| | ) | |
| **MATTHEW GIOVENCO** | ) | Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Defendants Matthew Giovenco and Guy Potter participated in a scheme to defraud RCN Telecom Services of Illinois, LLC ("RCN"), by falsely holding out Defendants' business, ICS Cable, Inc. ("ICS"), as a legitimate minority-owned business enterprise ("MBE"). As an MBE, ICS was purportedly eligible to provide certain cable installation and disconnection services pursuant to contracts with the City of Chicago. According to the indictment, starting in April 2003, and continuing through October 2006, Defendants represented to RCN that ICS was a legitimately certified MBE when, in fact, ICS was a minority front, and Defendants obtained MBE certification through the use of false documents. At the Defendants' direction or with their knowledge, co-Defendants Cheronne Mayes and her son, Jerone Brown (two African-Americans), posed as ICS's officers. In reality, Giovenco and Potter (two white men) ran the company and made all the relevant business decisions. Giovenco and Potter were charged with six counts of mail fraud, each count based on a mailing in furtherance of the fraud scheme made between May 1, 2006 and October 4, 2006. The fraud charges were tried to two juries, each of whom returned verdicts finding Defendants guilty on all six counts.

Defendant Giovenco now moves for a judgment of acquittal pursuant to FED. R. CRIM. P. 29. He argues that he cannot be held liable because he was fired from his position at ICS in February 2006, approximately three months before the first of the six mailings for which he was convicted. (*See* Def.'s Rule 29 Mot. [101]; Def.'s Renewed Rule 29 Mot. [109].) Rule 29 permits the court to enter a judgment of acquittal if, after considering all the evidence in the light most favorable to the government, the court concludes that "the record contains no evidence, regardless of how it is

weighed, upon which a rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Cummings*, 395 F.3d 392, 397 (7th Cir. 2005) (internal citation and quotation omitted). The standard is very generous to the jury's determinations; in deciding a Rule 29 motion, the court may not re-weigh the evidence or judge the witnesses' credibility. *United States v. Galati*, 230 F.3d 254, 258 (7th Cir. 2000) ("As long as there is a reasonable basis in the record for the jury's verdict, it must stand.").

The evidence that Giovenco engaged in the alleged fraud is substantial. The government demonstrated that Giovenco was present for, and actively participated in, the creation of ICS as a minority front. Giovenco created false individual and corporate tax returns and W-2s for the purpose of fraudulently obtaining MBE certification from the City of Chicago. Jerone Brown testified that Giovenco was present at meetings where Brown was introduced to RCN employees as the president of ICS. During the same time period, Giovenco was paying Brown $500 per month, and later $1,000 per month, to pretend he was ICS's president. Significantly, Giovenco signed a January 2006 subcontract agreement with RCN. (Gov. Ex. 28A). This subcontract was for work ICS performed for RCN between January 2006 and December 2006, and it established the method of billing and payment between the two entities. The mailings alleged in the indictment consist of packages containing payments RCN made to ICS later in 2006 pursuant to this subcontract.[1]

In this motion, Giovenco argues that he cannot be liable for the mailings because he was no longer employed by ICS when the mailings occurred. Potter fired Giovenco from his position as general manager of ICS in February 2006, after the two men had a falling out. Each of the six mailings charged in the indictment occurred between May 1, 2006 and October 4, 2006, after Giovenco was fired. Giovenco argues that "the actual crime in a mail fraud scheme is the posting

---

[1] Had the indictment been returned six months earlier, the court presumes that the January 2006 subcontract and other earlier payments would be among the charged mailings; whether Giovenco was a participant in the scheme at the time of the mailings would be a non-issue.

2

of the mails, and if [he was] not in the scheme at the time of the mailings, he is not liable for the crime." (Def.'s Renewed Rule 29 Mot. at 5.)

As the government suggests, Giovenco is effectively arguing that he withdrew form the scheme when he was fired. (Gov't's Resp. [110] at 8.) Were such an argument available in this case, the government contends, it would be ineffective here; as the government sees things, Giovenco's participation in the scheme did not end with his firing because he did not take "affirmative steps to stop concealing the scheme" or "acts to undermine the scheme or his prior participation in the scheme." (Gov't's Resp. [110] at 7-8.)[2] The government's suggestion that Giovenco was required to take some affirmative action to terminate his involvement in the scheme is reminiscent of the law of conspiracy. The law is well-settled that "[a] conspirator is liable for the acts of his coconspirators as long as he is a member of the conspiracy. Once he withdraws from the conspiracy, however, his liability ceases as to acts committed after his withdrawal." *United States v. Andrus*, 775 F.2d 825, 850 (7th Cir. 1985) (citation omitted). Withdrawal is an affirmative defense, which "presupposes that the defendant committed the offense." *Smith v. United States*, 133 S. Ct. 714, 719 (2013). The defendant bears the burden of establishing withdrawal and can do so by offering evidence that he took "affirmative action to disavow or defeat the purpose of the conspiracy." *Id.* at 720 (citation and internal quotation omitted).

This Circuit has held that withdrawal is not a substantive defense to mail fraud because although "[a] scheme to defraud and conspiracy embrace analogous . . . concepts[,] . . . the elements of the offenses are . . . different." *United States v. Read*, 658 F.2d 1225, 1239-40 (7th Cir. 1981). In *United States v. Read*, the court explained:

---

[2] The government notes, further, that Giovenco accepted three checks from ICS after his termination. Those checks pre-dated the charged mailings, but post-dated his termination. Because the checks are as consistent with separation from the scheme as they are with continued involvement, however, the court sees little significance in those payments.

3

> The predicate for liability for conspiracy is an agreement, and a defendant is punished for his membership in that agreement. Mail and securities fraud, on the other hand, punish the act of using the mails or the securities exchanges to further a scheme to defraud. No agreement is necessary. A party's "withdrawal" from a scheme is therefore no defense to the crime because membership in the scheme is not an element of the offense.

*Id.* at 1240. Thus, unlike the law of conspiracy, which criminalizes the agreement to engage in wrongdoing, the law of mail fraud punishes the defendant's "association and participation" in the charged activity. *Id.*; *See also Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 298-99 (7th Cir. 2003) (quotation and citation omitted).

*Read* remains controlling law and compels the court to reject Giovenco's contention that his termination from work at ICS by itself defeats the jury's verdict. In short, withdrawal is not a defense to a mail fraud scheme.[3] Under *Read*, a defendant is liable for foreseeable mailings by former co-schemers which occur after the defendant's participation in the scheme has ended; the troubling result is that the defendant is liable for the subsequent actions of others, just as in a conspiracy, even without a showing that the defendant continued active participation in the scheme at the time of the charged mailings. And the defendant himself may have no effective way of shielding himself from liability for co-schemer conduct after his participation has ended because, as discussed above, withdrawal is not an available defense. For these reasons, the court

---

[3] In reaching this conclusion, the court pauses to note that the Seventh Circuit is in the minority of circuits that have held that withdrawal is not a substantive defense to a mail fraud scheme. *Read*, 658 F.2d at 1239-40; *accord United States v. Waldrop,* 786 F.Supp. 1194, 1201 (M.D. Pa. 1991), *aff'd,* 983 F.2d 1054 (3d Cir. 1992); *see also United States v. Philip Morris USA, Inc.,* 449 F.Supp.2d 1, 907 n. 78 (D.D.C. 2006) (citing *Read*, 658 F.2d at 1240) (observing that a defendant's "withdrawal from the RICO conspiracy does not preclude its liability under 18 U.S.C. § 1962(c) for the substantive mail and wire fraud offenses that underlie the civil RICO lawsuit"); *but see, e.g., United States v. Green River Coal Co.*, 1997 WL 68216, (6th Cir. 1997); *United States v. Lothian*, 976 F.2d 1257, 1263 (9th Cir. 1992); *United States v. Rodgers,* 624 F.2d 1303, 1308 n. 14 (5th Cir.1980); *United States v. Cohen,* 516 F.2d 1358, 1364 (8th Cir. 1975); *Glazerman v. United States,* 421 F.2d 547, 551-52 (10th Cir. 1970); *United States v. Souder*, 08 CR 00136-1, 2009 WL 88919 (M.D.N.C. Jan. 12, 2009).

respectfully suggests that the Seventh Circuit reconsider *Read* and the Circuit's position on the withdrawal defense to mail fraud.

In light of *Read*, it does not matter that there is no evidence that Giovenco directly participated in the scheme after he was fired in February 2006. A defendant "may be held liable for . . . mailing[s] even if the mailings were only 'caused by' his actions or the actions of one of his co-schemers, so long as the use of the mails was reasonably foreseeable." *United States v. Cozzo*, No. 02 CR 0400, 2004 WL 725326, at *1 (N.D. Ill. Apr. 1, 2004) (citing *United States v. Genova*, 333 F.3d 750, 760 (7th Cir. 2003)). Particularly, a defendant can "properly be found to be jointly responsible . . . for setting the scheme in motion . . . and thus causing the mailings by third parties." *United States v. Read*, 658 F.2d 1225, 1240 (7th Cir. 1980) (quoting *United States v. Brighton Bldg. & Maint. Co.*, 598 F.2d 1101, 1104 (7th Cir. 1979)). Even if an individual leaves a mail fraud scheme, that individual can be held criminally liable for subsequent mailings that necessarily result from actions taken by the individual or his co-schemers during the individual's participation in the scheme. *Brighton Bldg. & Maint. Co.*, 598 F.2d at 1104.

Giovenco contends that *United States v. Knippenberg* requires that the government establish that he was an active participant in the scheme at the time of the charged mailings. 502 F.2d 1056 (7th Cir. 1974). The government correctly observes, however, that *Knippenberg* held that the defendant could not be held criminally liable for the substantive offenses of posting letters in furtherance of a scheme when the mailings took place *before* the defendant became involved. 502 F.2d at 1059-60. In that case, the court found that there was no evidence that the defendant had participated in the scheme before the mailings occurred, and thus, the court was unwilling to sustain the conviction "on the theory that [defendant] ratified earlier activity by joining the conspiracy." *Id.* at 1060.

Giovenco has also directed the court's attention to cases from other circuits in which courts have ruled that a defendant could not be held liable for mailings which occurred when the defendant

was not a participant in the scheme. *See, e.g., Van Riper v. United States*, 13 F.2d 961, 961-63, 967 (2d Cir. 1926) (defendant in a fraud scheme involving the sale of stocks is not liable for mailings by co-schemers which occurred after he discontinued the firm he was operating and no longer had any connection to his co-schemers' subsequent activities); *Blue v. United States*, 138 F.2d 351, 362 (6th Cir. 1943) ("The participation in the scheme cannot be said to link with the use of the mails, if such participation had ceased before the mails were used."); *United States v. Kaminski*, 692 F.2d 505, 517 (8th Cir. 1982) (defendant not criminally liable where the victims had not dealt with the company while the defendant was still involved with its operation.).

Under Seventh Circuit law, however, a defendant can be held criminally liable for mailings that occur after the defendant's participation in the scheme has ended if the mailings necessarily resulted from the defendant's earlier activity. *Read*, 658 F.2d at 1240*; Brighton Bldg. & Maint. Co.*, 598 F.2d at 1104. In *Brighton Bldg.*, the indictment alleged that the defendants conspired to engage in a restraint of trade, colluding to secure road construction contracts from the State of Illinois. 598 F.2d at 1103. The indictment included a number of counts of mail fraud, resting on mailings of bid documents, contracts, and payments by third parties, including the State of Illinois–all of which occurred after July 29, 1975, the date the defendants' plan was finalized. *Id.* at 1104. There is no honor among thieves, however, and the plan went awry when one group of defendants submitted a lower bid in contravention of the agreement. The defendants who were squeezed out challenged their mail fraud convictions, arguing that they were no longer participants in the scheme when the mailings occurred. *Id.* Finding that the mailings were "virtually inevitable results" of the defendants' activity on or before July 29, however, the court held that "[t]he defendants could properly be found to be jointly responsible with others for setting the scheme in motion up to that time, and thus causing the mailings by third parties. Thus, defendants could be found criminally liable for the mailings which necessarily resulted from earlier activity which these defendants conspired to bring about." *Id.*

In the case before this court, the evidence shows that Giovenco set the scheme in motion by participating in the creation of ICS and fraudulently obtaining MBE certification. While he was involved in the operation of the scheme, Giovenco dealt directly with RCN, the victim of the fraud. Giovenco knew that RCN would send the subject checks to ICS because he executed the subcontract pursuant to which ICS performed the work and RCN made the subject payments. Once the subcontract was executed, the charged mailings were bound to occur, unless one of the parties breached the agreement. The charged mailings were not only foreseeable to Giovenco; the jury could reasonably have concluded that they necessarily resulted from his earlier participation in the scheme. Thus, under the rationale of *Read* and *Brighton Bldg.*, Giovenco can be held liable for the mailings even though he left the company before the dates on which they were mailed. Viewing the evidence in the light most favorable to the government, the court cannot conclude that "the record contains no evidence, regardless of how it is weighed, upon which a rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Cummings*, 395 F.3d 392, 397 (7th Cir. 2005) (internal citation and quotation omitted).

Giovenco contends, further, that he is entitled to a judgment of acquittal because the government failed to prove that RCN was defrauded in any tangible way. This argument requires only brief discussion. "[I]t is well established that a fraudulent scheme that does not actually cause harm is still actionable." *United States v. Sorich*, 523 F.3d 702, 708 (7th Cir. 2008) (citations omitted). Giovenco contends that the evidence at trial showed that RCN was aware that former non-minority owned enterprises were creating new companies with a minority owner, and that RCN's operations department was aware that Defendants Giovenco and Potter were running ICS's day-to-day operations. (Def.'s Rule 29 Mot. at 4-5.) The jury was free to disregard that evidence, however. Finally, Giovenco argues that he must be acquitted because RCN did not suffer any tangible loss as a result of its contractual relationship with ICS. (*Id.* at 5.) But the government need not establish harm to the victim, nor any economic loss or pecuniary harm, to sustain a mail fraud

7

charge. *United States v. Del Valle*, 674 F.3d 696, 704 (7th Cir. 2012); *United States v. Leahy*, 464 F.3d 773, 786-87 (7th Cir. 2006).

## **CONCLUSION**

Giovenco's motions for a judgment of acquittal [101; 109] are denied.

ENTER:

Dated: August 28, 2013

_____
REBECCA R. PALLMEYER
United States District Judge